**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRIAN PARKER,

       Plaintiff,

v.                                                             Case No. 06-CV-10564-DT

ROBERT CASSA,

       Defendant.

                                   /

**ORDER ADOPTING THE MAGISTRATE JUDGE'S  REPORT AND
RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DEFAULT AND SANCTIONS**

**I.  INTRODUCTION**

Plaintiff Brian Parker filed this *pro se* prisoner civil rights case pursuant to 42

U.S.C. § 1983, alleging that Defendant Robert Cassa, a Michigan Department of

Corrections ("MDOC") officer, used excessive force upon Plaintiff in violation of the

Eight Amendment to the United States Constitution.  The court referred the case to

Magistrate Judge Virginia Morgan.  The parties filed cross motions for summary

judgment and Plaintiff further argued in his motion for entry of default, contempt and

sanctions.  The magistrate judge issued a report and recommendation ("R&R") on

February 16, 2007, recommending that the court grant Defendant's motion, deny

Plaintiff's motion and dismiss Plaintiff's case with prejudice.  Plaintiff filed objections to

the R&R on March 2, 2007.  For the reasons stated below, the court, having reviewed

the record, agrees that there are no triable issues of fact.  The court will adopt the

magistrate judge's R&R.

## II.  BACKGROUND

Plaintiff filed a complaint alleging that Defendant, a corrections officer, assaulted him and used excessive force.  Plaintiff alleges that this treatment gives rise to a claim under 42 U.S.C. §1983 for a violation of his Eighth Amendment protection against cruel and unusual punishment.

Plaintiff was an inmate at Parnall Correctional Facility ("Parnall") in Jackson, Michigan.  Defendant is a corrections officer at Parnall and was a corrections officer there during the time Plaintiff was housed there.  Plaintiff is a brittle diabetic and had numerous diabetic seizures while he was at Parnall.  His dietary intake therefore requires monitoring.

The incident occurred on August 12, 2005.  (Compl. at ¶ 16.)  According to Plaintiff, he was seated in the dining hall at a table designated by Defendant.  (*Id.*)  Defendant then allegedly yelled at Plaintiff and gave him a standing order to report to the dining hall every day and to check in with either the Defendant or a colleague.  (*Id.*)  Plaintiff alleges that Defendant approached him and yelled "Bitch, do you understand me?" and slammed his hand forcefully on the table in front of Plaintiff.  (*Id.*)  Plaintiff alleges that, in response to Defendant, he waived his hand in a way that suggested "he wanted nothing to do with Sgt. Cassa."  (*Id.*)   Then Defendant yelled out that Plaintiff was having an insulin reaction.  (*Id.*)  Plaintiff alleges that Defendant grabbed Plaintiff by the neck, choking him, and that, while dragging him away, Defendant dug his nails into Plaintiff's side, causing bruising and bleeding, and that Defendant banged Plaintiff's head into a door.  (*Id.*)

Defendant agrees that he believed Plaintiff was having an insulin reaction because, contrary to what Plaintiff asserts, Plaintiff did not respond to Defendant when he was slamming his hand on the table. (Def.'s Aff., ¶ 7.)  Defendant witnessed Plaintiff have diabetic seizures before the date of this incident, and health care authorities requested that he monitor Plaintiff's diet. (*Id.*, ¶ 3.)  Defendant asserts that on August 12, 2005, when he approached Plaintiff to allow him to leave the dining hall, Plaintiff was unresponsive to any attempts to get his attention made by another Parnall employee and himself.  (*Id.*, ¶ 7.)   Defendant also concedes that he banged his hand on the table in front of Plaintiff in order to spark some sort of reaction. (*Id.*)  Defendant asserts that Plaintiff exhibited no hand movement, rather that Plaintiff's hands were at his side and that his eyes were "fixed, glossy and staring blankly ahead." (*Id.*)  Because of Plaintiff's actions, Defendant believed that Plaintiff was having another diabetic seizure and needed immediate help. (*Id.*)  Defendant then carried Plaintiff to health care, which took about ninety seconds as opposed to waiting perhaps more than fifteen minutes for a standard health care response. (*Id.*)

Both parties concede that Plaintiff had high blood sugar and was in need of an insulin shot. (*Id.*, ¶ 8; Compl. at ¶ 17.)  Plaintiff states that high blood sugar does not cause him to have this kind of reaction. (Compl. at ¶ 17.)  While this may be true, the facts that Plaintiff asserts in his claim contradict statements he made when he initially filed his grievance.

In his complaint, Plaintiff asserts that he made a hand gesture towards Defendant before Defendant carried him to medical care. (*Id.*)  However, in his grievance, Plaintiff stated that when Defendant came over to him and began yelling, "I'm

3

giving you a direct order to come to the dining hall for breakfast and lunch and you are to report to me," Plaintiff ignored him.  (8/17/05 Prisoner Grievance, Compl. at 10.)

### III.  STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56, which governs summary judgment motions, provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*, 477 U.S. at 250.

In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party.  Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).  It is not the role of the court to weigh the facts.  *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir. 1987).  Rather, it is the duty of the court to determine "whether .

. . there are any genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." *Anderson*, 477

U.S. at 250.

When a summary judgment motion is predicated on a factual issue and is

adequately supported, the non-moving party must take some affirmative action to avoid

the entry of a summary judgment.

> When a motion for summary judgment is made and supported as provided
> in this rule, an adverse party may not rest upon the mere allegations or
> denials of the adverse party's pleading, but the adverse party's response,
> by affidavits or as otherwise provided in this rule, must set forth specific
> facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

The mere existence of a scintilla of supporting evidence is insufficient. *Street v.

J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Additionally, a party's failure

to make a showing that is "sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial"

mandates the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

### B.  Review of Reports and Recommendations

The filing of timely objections requires the court to "make a *de novo*

determination of those portions of the report or specified findings or recommendations

to which objection is made." 28 U.S.C. § 636(b)(1). See *United States v. Raddatz*, 447

U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo*

review, in turn, requires this court to re-examine all the relevant evidence previously

reviewed by the magistrate to determine whether the recommendation should be

accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).  The court

may "receive further evidence" if desired.  *Id.*

A general objection, or one that merely restates the arguments previously

presented, is not sufficient to alert the court to alleged errors on the part of the

magistrate judge.  An "objection" that does nothing more than state a disagreement with

a magistrate's suggested resolution, or simply summarizes what has been presented

before, is not an objection as that term is used in this context.  *Howard v. Sec'y of*

*Health and Human Servs.,* 932 F.2d 505, 508 (6th Cir. 1991) ("It is arguable in this case

that Howard's counsel did not file objections at all . . .  [I]t is hard to see how a district

court reading [the 'objections'] would know what Howard thought the magistrate had

done wrong."); *Slater v. Potter,* 28 F. App'x 512, 513 (6th Cir. 2002) ("The filing of

vague, general, or conclusory objections does not meet the requirement of specific

objections and is tantamount to a complete failure to object.").  "The objections must be

clear enough to enable the district court to discern those issues that are dispositive and

contentious."  *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard*, 932 F.2d

at 509).

A party who files timely objections to a magistrate's report in order to preserve

the right to appeal must be mindful of the purpose of such objections: to provide the

district court "with the opportunity to consider the specific contentions of the parties and

to correct any errors immediately."  *Walters*, 638 F.2d at 949-50.  The Supreme Court

upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case.  The

Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the

6

district judge to focus attention on those issues--factual and legal--that are at the heart

of the parties' dispute."  *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the

district court will be preserved for appellate review;  making some objections but failing

to raise others will not preserve all the objections a party may have."  *Smith v. Detroit*

*Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## IV.  DISCUSSION

### 1.  Plaintiff's Preliminary Objections

The first page of Plaintiff's objections to the R&R contains two paragraphs

alleging general opposition to the R&R.  Plaintiff claims (1) that the magistrate judge

failed to address the merits of Plaintiff's position, (2) that release of his medical records

(for which he voluntarily signed a consent form) to the Attorney General placed him "at a

disadvantage" and (3) that, in any event, the medical documents "did not support

Defendant's side of the story."   (Pl.'s Obj. at 1.)  These general objections fail to meet

the specificity requirement as it is explained in *Walters*, 638 F.2d 947.

### 2.  Plaintiff's "First Objection"

The bulk of Plaintiff's objections under his "First Objection" heading are

conclusory and merely stated in general opposition to the R&R.  They therefore fail for

lack of specificity under *Walters*, 649 F.2d 947.  The only specific complaint within the

objection claims that the R&R mistakenly concluded that Plaintiff received medical

treatment after the alleged assault when in fact he only had treatment that morning

before lunch.  (Pl.'s Obj. at 2.)  He asserts that "nothing in the record" reflects treatment

after the alleged response.  (*Id.*)  On the contrary, the medical records filed under seal

as exhibit B to Defendant's motion for summary judgment indicate that Plaintiff did

receive treatment after Defendant took him to the health care department.  Plaintiff

admits as much elsewhere in his objections, stating that his treatment after the incident

was "nothing more than a quick evaluation."  (Pl.'s Obj. at 4.)  The court will therefore

reject Plaintiff's "First Objection."

### 3.  Plaintiff's "Second Objection"

Under this heading, Plaintiff lists several objections that are broadly stated.  In

essence, he argues that the R&R failed to consider the evidence in the light most

favorable to Plaintiff and, specifically, that the magistrate judge should not have

considered the affidavit of Defendant, which Plaintiff claims contains false statements.

(Pl.'s Obj. at 3-5.)  These blanket arguments, again, lack the required specificity.

*Walters*, 649 F.2d 947.  Even if they did not, the R&R did not err in its essential legal

analysis.

The R&R accurately stated the controlling law.  The United States Supreme

Court has held that the requirements to establish an "unnecessary and wanton infliction

of pain" vary depending on the circumstances of the alleged constitutional violation.

*Hudson v. McMillan,* 503 U.S.1, 5, (1992).  In *Hudson,* the court articulated two different

standards for two very different circumstances.  The appropriate standard when an

inmate alleges that prison officials did not respond appropriately to serious medical

needs is whether the officials exhibited "deliberate indifference."  *Id.*  However, in a

situation where there is a prison disturbance and the guard must respond, the

appropriate standard is "whether the measure taken inflicted unnecessary and wanton

pain and suffering ultimately turns on whether the force was applied in a good faith

effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (internal quotation marks and citations omitted).  This was the standard applied in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), in a case where, similarly, a prisoner claimed that a guard beat and harassed him.  *Hudson* further states that "[w]hether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates."  503 U.S. at 6.

When inquiring whether the force applied was to restore order in good faith or to maliciously inflict harm, the court should consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful purpose."  *Id.*  In addition, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional right."  *Hudson*, 503 U.S. at 9 (quoting *Glick,* 481 F.2d at 1033).  There is no Eighth Amendment protection from *de minimus* uses of physical force as long as the force is not "repugnant to the conscience of mankind."  *Id.* at 9-10.  (internal citations omitted). The actual injuries need not be severe, but rather the force must more than *de minimus. Id.*

As the R&R concluded, the facts, even when viewed in a light most favorable to the Plaintiff, support no more than a scintilla of evidence showing that Defendant did not act in good faith.  Defendant announced that he believed Plaintiff to be having a diabetic seizure.  While Plaintiff stated that having high blood sugar does not induce seizures, he did admit to ignoring Defendant.  A reasonable jury would find insufficient evidence to

support Plaintiff's contention that Defendant could not have believed, based on his past experience with Plaintiff's seizures and Plaintiff's actions at that time, that Plaintiff was in need of immediate medical attention.  In addition, although Plaintiff alleges that he was not in need of any medical care, he did receive medical attention after he was taken to health care.  Plaintiff attached four exhibits to his compliant to rebut Defendant's contentions.  The exhibits do not help Plaintiff's case.  The grievance report instead indicates that Plaintiff ignored Defendant.  The exhibits do not amount to evidence that Defendant did not actually believe that Plaintiff was having a diabetic seizure and that he needed medical attention immediately.   None of these exhibits creates a genuine issue of material fact.

There is, as the R&R stated, an objective element in the evaluation of Plaintiff's claim as well.  *Hudson*, 503 U.S. at 8.  While the Eighth Amendment's prohibition of cruel and unusual punishment excludes "*de minimus* uses of physical force, provided that the use of force is not the sort repugnant to the conscience of mankind," it is not the extent of the injuries that should be evaluated.  *Id.*  at 9-10 (internal quotation marks omitted).  In *Hudson,* the court held that, while the actual injuries that Hudson sustained were *de minimus*, the "blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimus* for Eighth Amendment purposes."  *Id.* at 10.

According to the standards set forth in *Hudson*, Plaintiff's case does not present a violation of the Eighth Amendment.  Defendant stated that the amount of time it took him to get Plaintiff to health care was approximately one and one half minutes.  (Def.'s

Aff., ¶7.)  Given Defendant's unrebutted belief that Plaintiff was having a seizure, no

reasonable factfinder could dispute that there was a great need for application of force

due to the perceived threat of the serious health damage a prolonged seizure could

cause, the amount of force applied was reasonable and the forceful response was not

too severe.  Further, there is no question of material fact concerning whether Defendant

would have had to act quickly to contain Plaintiff's apparent seizure to minimize harm to

Plaintiff or those near him and to expedite medical care for Plaintiff.

The use of force in this case was *de minimus.*  It only lasted one and one half

minutes, Defendant did not strike Plaintiff[1] and Plaintiff admittedly received medical

care.  It was Plaintiff's actions that caused Defendant to believe he was in need of

immediate medical attention.  Even if Plaintiff made some minimal hand motion, (which

he only references in his compliant but not in his initial grievance), Defendant could

reasonably assume, based on Plaintiff's condition, that the hand movement was non-

responsive and involuntary because of a suspected diabetic seizure.  Plaintiff's denials

and accusations, without more, do not create a material question of fact.

In addition, Plaintiff never received any medical care for the alleged injuries from

Defendant.  In fact, Plaintiff only complains of some scratching and bruising that would

be consistent with, and incident to, being rushed someplace for medical care.  The lack

of injury suffered by Plaintiff, while not dispositive, supports the finding that any force

Defendant used was itself *de minimus.  See*, *e.g*, *Outlaw v. Newkirk,* 259 F.3d 833, 839

---

[1]While Plaintiff claims Defendant banged Plaintiff's head into a door, there is no allegation that Defendant struck Plaintiff directly or tried to injure him.  Contact with the door, while unfortunate, is consistent with the act of shuttling Plaintiff through a doorway expeditiously on the way to medical care.

(7th Cir. 2001) ("Moreover, the minor nature of Outlaw's injuries strongly suggests that the force applied by [defendant prison guard] was *de minimus.*"). Again, "[n]ot every malevolent touching by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (quoting *Glick,* 481 F.2d at 1033). The R&R therefore did not err in its analysis of Defendant's motion for summary judgment.

### 4.  Plaintiff's Remaining Objections

Finally, Plaintiff recounts a number of alleged discovery violations, particularly concerning access to medical records, and a failure of the magistrate judge to provide adequate time for discovery in order to show continuation of medical treatment. Defendant's allegations find no support in the record and, in any event, Defendant fails to articulate how these collateral matters have prejudiced him. Nor is it apparent to this court how these matters would impact the analysis of the R&R of the viability of Plaintiff's claim. The court thus concludes that Plaintiff's remaining objections are unpersuasive and irrelevant to the core issues analyzed in the R&R. "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller,* 50 F.3d at 380 (citing *Howard*, 932 F.2d at 509).

### 5.  Plaintiff's Request for Default and Sanctions

Plaintiff has also failed to respond adequately to the recommendation to deny his request for default and sanctions for failure to respond to interrogatories. Defendant filed a response to Plaintiff's original motion, stating that he mailed responses on December 15, 2006. (Def.'s 12/28/06 Resp. at 1.) As the R&R stated, Plaintiff did not argue to the contrary. (R&R at 7.) The court is therefore not persuaded that Defendant

12

failed to timely serve Plaintiff with responses to interrogatories or, further, that,

assuming such failure, Plaintiff was prejudiced.

## V. CONCLUSION

IT IS ORDERED that the Report and Recommendation [Dkt. # 59] is ACCEPTED

and adopted as the findings of this court.

Defendant's "Motion for Summary Judgment" [Dkt. # 49] is GRANTED and

Plaintiff's "Motion for Summary Judgment . . . and . . . to Enter Default . . . for Contempt

of Court & Sanctions . . . " [Dkt # 53] is DENIED.


　S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 30, 2007, by electronic and/or ordinary mail.

　S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

3/30/07:S:\Cleland\JUDGE'S DESK\C2 ORDERS\06-10564.PARKER.AdoptR&R.wpd

13